[Civ. No. 33343.  Second Dist., Div. Five.  Jan. 30, 1970.]

IRVING ZEMELMAN et al., Plaintiffs and Appellants, v.
BOSTON INSURANCE COMPANY et al., Defendants and Respondents.

## COUNSEL

Jack D. Scott for Plaintiffs and Appellants.

Long & Levit and David C. Bogert for Defendants and Respondents.

## OPINION

**REPPY, J.**—Appellants, who are copartners, brought this action against six insurance companies to recover the proceeds of policies of fire insurance and interest thereon claimed to be due after a fire damaged the partnership premises which were the subject of the policies. In their answers the insurance companies claimed that such policies were voided when one of the copartners, Irving Zemelman, made false statements on behalf of the partnership in its claim for the proceeds. Five of the insurance companies, who are the respondents herein, were granted summary judgments after both sides joined in a stipulation to the effect that Irving had been convicted of five counts of violating section 556 of the Insurance Code (willfully presenting to insurance company a false and fraudulent claim for the payment of a loss under contract of insurance).[1]

Appellant's briefed contentions are as follows: 1) Willful misrepresentation made by one copartner should not be imputed to an innocent copartner to bar recovery under a policy of fire insurance, and, therefore, there is a triable issue of fact which precludes the court from granting summary judgment, to wit: did the innocent copartner, Hyman, in any way participate in or have knowledge of the fraudulent claim; and 2) even if Irving's acts can be imputed to Hyman, the clause relied on by respondents[2] should not be allowed to void the contract because to do so would be against public policy.

### I.

■ Appellants appear to mistakenly believe that Hyman has an independent claim to one-half of the insurance proceeds which is severable from

---

[1]Summary judgment was not granted as to the sixth insurance company on the apparent finding that no false claim had been made against it.

[2]The clause, which is expressly made a part of the standard form of fire insurance for this state (Ins. Code, § 2073) reads as follows:

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

18

the claim of his copartner, Irving. Such is not the case when a partnership is involved. Any proceeds which might be recovered become the assets of the partnership. (Corp. Code, § 15008, subd. 1; 3 Witkin, Summary of Cal. Law (1960) Partnership, § 17, pp. 2278-2279), and so are owned by the partners as tenants in partnership having the incident of undivided ownership in the whole. (Corp. Code, § 15025.) ■ Thus, this action, while maintained in the individual names of the copartners, is an attempt to recover partnership assets. If the actions of Irving preclude the partnership from recovery, Hyman cannot recover separately.

■ The particular relationship between copartners which we focus on in the instant case is explained in an early opinion by our Supreme Court: "All the partners will be bound by the fraud of one of the partners in contracts relating to the partnership made with innocent third parties. That is to say, all are responsible for the injury occasioned by the fraud, . . . whether they were cognizant of the fraud or not. The rule is the same as it is in respect to the responsibility of the principal for the fraud of his agent, while acting within the scope of his authority; and, indeed, a partner becomes liable for the fraud of his co-partner, because of the relation each bears to the other of agent in the partnership business." (*Stewart* v. *Levy,* 36 Cal. 159, 165; cf. *Pearson* v. *Norton,* 230 Cal.App.2d 1, 14-15 [40 Cal.Rptr. 634]; *Grant v. Weatherholt,* 123 Cal.App.2d 34, 45-47 [266 P.2d 185]; *Siebold* v. *Berdine,* 61 Cal.App. 158, 162 [214 P. 655]; see also *Blackmon* v. *Hale* (1970) 1 Cal.3d 548 [83 Cal.Rptr. 194, 463 P.2d 418].)

■ If it can be said that Irving's acts were done within the scope of his authority as a copartner, then the partnership is bound to accept the legal consequences of such acts. (See Corp. Code, § 15013; cf. Civ. Code, § 2338.) Acts within the scope of authority of a copartner are generally considered to be those which are ". . . for apparently carrying on in the usual way the business of the partnership of which he is a member. . . ." (Corp. Code, § 15009, subd. 1.)

Appellants take the position that Irving's acts were *not* within the scope of his authority as a copartner, relying on *Nuffer* v. *Insurance Co. of North America,* 236 Cal.App.2d 349 [45 Cal.Rptr. 918]. Such reliance is misplaced. In *Nuffer* an agent had a power of attorney and willfully burned down premises insured under certain fire insurance policies. The appellate court ruled (at p. 357) that a principal is not foreclosed from collecting the proceeds of insurance policies because his agent committed *arson,* an act not within that agent's apparent authority. In doing so, the court cited certain decisions which held that a principal is responsible for the results of his agent's filing of a false insurance claim even without the principal's

knowledge, and distinguished them because in each the *false filing* was done with apparent authority. (See *Gift* v. *Ahrnke,* 107 Cal.App.2d 614, 622 [237 P.2d 706]; *Tenore* v. *American & Foreign Ins. Co. of N.Y.* (7th Cir. 1958) 256 F.2d 791, 794-795; *Bockser* v. *Dorchester Mut. Fire Ins. Co.,* 327 Mass. 473 [99 N.E.2d 640, 642, 24 A.L.R.2d 1215].)

■ Because the partnership is bound by the acts of Irving, and documentary proof of his conviction (after his plea of "not guilty" and trial before a jury for filing false insurance claims) was attached to respondents' motion for summary judgment, there was no issue of fact to be decided and the trial court was correct in granting the motion. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.,* 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439].) As a matter of law the insurance contracts were voided and the partnership was foreclosed from receiving any part of their proceeds.

## II.

Appellants argue that the clause upon which respondents rely should be declared contrary to public policy when applied to the amount of damages actually brought about by a fire not caused by the insured. This contention was answered by the Fifth Circuit in *Chaachou* v. *American Central Ins. Co.* (5th Cir. 1957) 241 F.2d 889, 892, 893: "The contract does not spell out that it is only false swearing, misrepresentation, concealment or fraud which is successful that avoids the policy. . . . A judge-made policy which thus gives advantage to dishonesty will retard, not accelerate, the orderly adjustment of insurance losses." The clause considered in the *Chaachou* case is the same as the one involved in the instant case (see fn. 2, *ante*).

■ At oral argument Hyman urged that Irving's only culpability which could be attributed to the partnership was, in the statutory language, "false swearing . . . relating [to the subject of the insurance]," and that the word "material" should be read into the provision as a modifier just as the word "material" appearing in the preceding phrase is a modifier of the word "fact."[3] He then argues that in a full trial the facts might show that the value of the false items included were less than the difference between the claim and the coverage,[4] thus making the false swearing immaterial. It is unnecessary to decide whether Hyman's construction argument has merit since his total point is unavailing because he presented no proof in the summary judgment proceeding by way of declaration or affidavit which

[3]Policy void "if the insured has wilfully . . . misrepresented any material fact . . . ."

[4]Example: value of false items $1,000; amount of claim $5,800; amount of insurance coverage $4,000.

would afford even an inference that the false part of the claim had any such relation to coverage and actual loss.

Hyman also argued that the law should be that the amount of the false claim be something more than minimal before the penalizing effect of the statute is applied against the transgressor. He gave the example of an automobile owner including a preexisting fender dent into a subsequent claim of major damage sustained in a second accident, suggesting such practice was rather common and was not serious enough to call the subject clause into play. It is unnecessary to pass on the legal aspect of the argument because, again, the factual showing is missing.

The judgment is affirmed.

Stephens, Acting P.J., and Aiso, J., concurred.